# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

BRYAN S. ALLEN,

        Petitioner,  :        Case No. 1:24-cv-185

    - vs -                    District Judge Matthew W. McFarland
                               Magistrate Judge Michael R. Merz

WARDEN, Southeastern Correctional
  Institution,

                             :
        Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought by Petitioner Bryan Allen with the assistance of counsel to obtain relief from his conviction in the Scioto County Court of Common Pleas for aggravated trafficking in drugs, aggravated possession of drugs, possessing criminal tools, and conspiracy.  The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 10), and the Warden's Return of Writ (ECF No. 11).  When ordering the Warden to answer, Magistrate Judge Litkovitz set a reply deadline of twenty-one days after the Return was filed (Order, ECF No. 6, PageID 39).  That deadline passed July 23, 2024, but Petitioner has not filed a reply.

The Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District.

1

**Litigation History**

On February 12, 2020, the Scioto County grand jury indicted Allen on one count of aggravated trafficking in drugs in violation of Ohio Rev. Code § 2925.03(A)(2) and § 2925.03(C)(1)(c) (count 1), one count of aggravated possession of drugs in violation of Ohio Rev. Code § 2925.11(A) and § 2925.11(C)(1)(d) (count 2), one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A) and § 2923.24(C) (count 3), and one count of conspiracy in violation of Ohio Rev. Code § 2923.01(A)(1) and § 2923.01(J)(2) (count 4)(Indictment, State Court Record, ECF No. 10, Ex. 1).

Allen initially pleaded not guilty and filed a motion to suppress. After that motion was denied, he changed counsel and filed a new motion to suppress which was also denied. Allen then pleaded no contest to four charges pursuant to a plea agreement. (State Court Record, ECF No. 10, Ex. 12). The plea included a recommended sentence of six years and merger of counts one and two, the aggravated trafficking and possession charges. Under Ohio law, a defendant can plead no contest and preserve his right to appeal a ruling on a motion to suppress, which is what Allen did.

Two days before his scheduled sentencing, Allen changed counsel again and moved to withdraw his no contest plea. That motion was denied and the trial court sentenced Allen to a mandatory minimum prison term of nine years to an indefinite maximum prison term of up to thirteen years and six months on the aggravated trafficking count with a concurrent six month sentence for possessing criminal tools.

Allen appealed to the Ohio Fourth District Court of Appeals which affirmed the conviction (Decision, State Court Record, ECF No. 10, Ex. 21). The Ohio Supreme Court declined to exercise

jurisdiction over a subsequent appeal. *State v. Allen*, 169 Ohio St.3d 1492 (2023). Petitioner then filed his Petition in this Court, pleading the following grounds for relief:

> **Ground One:** Petitioner asserts his Due Process Clause rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated by the state trial and appellate courts in ruling on Petitioner's motion to suppress evidence under the Fourth Amendment to the United States Constitution. Petitioner moved to suppress evidence on the ground that the vehicle in which the evidence was hidden was stopped without probable cause, and therefore the evidence was seized in violation of the Fourth Amendment to the United States Constitution.
>
> **Grounds Two and Three**: Petitioner asserts ineffective assistance of appellate counsel under the Sixth Amendment to the United States Constitution as to Petitioner's state court retained appellate attorney in failing to argue denial of motion to suppress evidence/Fourth Amendment violation on appeal to Ohio Supreme Court and in failing to argue Due Process Clause violation in Fourth District Court of Appeals.
>
> **Ground Four:** Petitioner asserts a violation of his Sixth Amendment right to jury trial and violation of the Fifth Amendment Due Process Clause by virtue of the denial of Petitioner's motion prior to sentencing to withdraw plea of no contest. Petitioner asserts ineffective assistance of trial counsel and discord between himself and trial counsel and innocence as reasons to withdraw the plea. Petitioner also asserts his innocence as a claim in this Petition.

(Petition, ECF No. 1, Page ID 3)[1].

# Analysis

**Ground One: Denial of Due Process: Failure to Follow Precedent**

**Procedural Default**

---

[1] Petitioner has not filed his Petition in the form required by the Rules Governing § 2254 Cases. Instead, he has filed a narrative Petition and incorporated by reference an attached Memorandum. The Magistrate Judge has copied the above statement of claims directly from the Petition as pleaded.

In his first Ground for Relief, Petitioner asserts his Fourth Amendment rights were violated when he was convicted on the basis of evidence seized in violation of the Fourth Amendment.

Respondent asserts any Fourth Amendment claims are barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976)(Return, ECF No. 11, PageID 594-97, citing *Stone* and its progeny). Petitioner, however, does not seek to litigate a Fourth Amendment claim directly. Instead, he asserts "[t]he Fourth Amendment issue is not raised herein but is discussed because it forms the foundation for the Fifth/Fourteenth Amendment Due Process Clause violation in this case and various Sixth Amendment ineffective counsel issues." (Memorandum, ECF No. 2, PageID 16).

Petitioner's argument is that his due process rights[2] were violated when the Fourth District Court of Appeals failed to follow the decision of the Ohio Supreme Court interpreting the statute governing driving with respect to so-called fog lines[3] in *State v. Turner*, 163 Ohio St.3d 421 (Dec. 22, 2020).

Petitioner presented this claim to the Fourth District Court of Appeals as follows:

> **Second Assignment of Error:** The trial court abused its discretion in denying defendant-appellants motion to suppress.
>
> **Issues Presented**
>
> Whether the trial court abused its discretion in denying defendant-appellant's motion to suppress.
>
> Whether the trial court abused its discretion in denying Defendant-Appellant's motion to suppress after *State v. Turner*, 163 Omo St. 3rd 421, was issued in light of the fact that the state trooper testified that the wheels of the vehicle were touching the fog line at all times.

---

[2] Although Petitioner cites both the Fifth and Fourteenth Amendment Due Process Clauses, only the Fourteenth prohibits state actions. *Barron ex rel Tiernan v. Mayor of Baltimore*, 7 Pet. 243 (1833)(Marshall).
[3] The Court takes judicial notice that the painting of fog lines on state highways in Ohio was a safety feature of Ohio highway administration introduced by former Governor James A. Rhodes (1963-1971 and 1975-1983). Whatever impact it has had on drug trafficking enforcement, it has undoubtedly contributed to highway safety and has been widely adopted both in the United States and in other countries.

(Appellant's Brief, State Court Record, ECF No. 10, PageID 172).

The Fourth District decided the Second Assignment of Error as follows:

> {¶ 31} In his second assignment of error, Allen contends that the trial court erred in denying his motion to suppress. More specifically, Allen argues that the trial court's findings of fact regarding the circumstances leading up to the initial stop were against the manifest weight of the evidence. Although he concedes that this Court deferentially reviews questions of fact when considering an appeal from the denial of a motion to suppress, he argues that such deference must only be afforded when the factual findings are supported by competent, credible evidence, which Allen argues the record here lacks. Allen ultimately contends that the troopers lacked the requisite reasonable suspicion to warrant an investigative stop, that the stop therefore constituted an unlawful investigative stop, and that the trial court erred in denying his motion to suppress. The State responds by arguing that the trial court properly found that the vehicle in which Allen was riding "crossed over the right outside edge of the fog line." The State further points out that the trial court found "that the vehicle traveled for a considerable amount of distance across that line" and "that that would be an additional danger and would be unsafe conduct, as discussed in the statute." Thus, the State argues that the trial court's ruling on the motion to suppress was in accordance with both statutory and case law and that its decision denying the motion to suppress should be affirmed.
>
> **Standard of Review**
>
> {¶ 32} In general, "appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, 17. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, 18. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." Id. " 'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " *Codeluppi* at 17, quoting *Burnside* at 18.

**Fourth Amendment Principles**

{¶ 33} To determine whether the trial court erred in denying the motion to suppress we must consider the reasonableness of the traffic stop. "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14 prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787,115. This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure. *Id*.

{¶ 34} This case involved an investigatory stop, which must be supported by a reasonable, articulable suspicion that the driver has, is, or is about to commit a crime, including a minor traffic violation. See *State v. Hudson*, 4th Dist. Gallia No. 17CA19, 2018-Ohio-2717, 114; *State v. Fowler*, 4th Dist. Ross No. 17CA3599, 2018-Ohio-241, ¶ 16, citing *United States v. Williams,* 525 Fed.Appx.330,332 (6th Cir.2013), and *Florida v. Royer,* 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). "To justify a traffic stop based upon reasonable suspicion, the officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the driver has committed, or is committing, a crime, including a minor traffic violation." *State v. Taylor,* 2016-Ohio-1231, 62 N.E.3d 591, 'IJ 18 (4th Dist.). The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop. *Id*.

{¶ 35} Moreover, a police officer may stop the driver of a vehicle after observing even a *de minimis* violation of traffic laws. *See State v. Williams,* 4th Dist. Ross No. 14CA3436, 2014-Ohio-4897, ¶ 9, citing *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and *Dayton v. Erickson,* 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus {1996). "(A] traffic stop with the proper standard of evidence is valid regardless of the officer's underlying ulterior motives as the test is merely whether the officer 'could' have performed the act complained of; pretext is irrelevant if the action complained of was permissible." *State v. Koczwara*, 7th Dist. Mahoning No. 13MAl49, 2014-Ohio-1946, ¶ 22, citing *Erickson* at 7 and 11.

{¶ 36} Here, the trial court made a factual determination based upon the dashcam video and the trooper's testimony that the vehicle in which Allen was a passenger had travelled across the white fog line

on two separate occasions. Because the trial court is the trier of fact and is in the best position to resolve factual questions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. See *State v. Burnside* at ¶ 8.

### Legal Analysis

{¶ 37} We initially note that Allen not only contends that the record fails to support the trial court's finding that the vehicle at issue travelled over the white fog line twice, he also argues that the stop was pretextual and was actually part of a wider drug interdiction effort. However, that argument was not properly preserved for purposes of appeal. Moreover, the Supreme Court of Ohio has clearly stated as follows:

> Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop.

*Dayton v. Erickson, supra*, at paragraph one of the syllabus.

{¶38} On appeal, Allen argues that the testimony of the state trooper during the suppression hearing "is directly controverted by the video tapes that were submitted as exhibits during the first suppression hearing." He argues that the video demonstrates that "the right side tires of the vehicle never intersect the line" and that "at no time was the full tire over the line." Thus, Allen contends that "[g]iven that the tire was in contact with the line at all times, its clear that * * * there was no probable cause or reasonable articulable suspicion that a traffic infraction occurred * * * ." The State contends that the trial court properly found that the tire of the vehicle crossed the white fog line by half a tire width and thus, that the stop was therefore valid.

{¶39} Here, the record before us indicates that the stop was initiated as a result of a traffic violation, in particular R.C. 4511.33, which requires drivers to drive their vehicles entirely within a single lane of traffic and to remain within the lane markings "as nearly as practicable." R.C. 4511.33 also provides in section (A)(l) that vehicles "shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." Importantly, the Supreme Court of Ohio recently considered the "legal question of whether touching the solid white longitudinal line-the fog line- violates R.C. 4511 .33(AXI)." *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, 170 N.E.3d 842, ¶1 s. The Court

ultimately determined that a police officer does not have reasonable articulable suspicion to execute a traffic stop when the officer observes a vehicle "driving on" or "touching" the fog line. *Id*. at ¶ 3. However, the Court also held that the plain language of R.C. 4511.33(A)(l), read in conjunction with the definitions set forth in R.C.4511.01," 'discourages or prohibits' a driver from 'crossing [the fog line.]'" *Id*., citing Manual of Uniform Traffic Control Devices ("MUTCD"), Section 3A.06(B) (Jan 13, 2012). The Court reasoned that because Turner "did not cross the single solid white longitudinal line - the fog line - and driving on it or touching it is not prohibited under R.C.4511.33(A)(l), no violation occurred." *Turner* at ¶ 35. The Court did not elaborate further regarding to what extent a driver must cross the fog line for there to be a violation of R.C. 4511.33. That is essentially now the area of dispute in the present appeal, i.e., whether crossing the fog line by half a tire width constitutes a violation or whether the entire tire must cross over the line in order for there to be a violation.

{¶ 40} In its decision denying Allen's first motion to suppress, the trial court noted that Trooper Day testified that he observed the vehicle at issue travel across the white fog line two times. The trial court also noted that the dashcam video supported the trooper's testimony as to the fog line violations, stating that while the video was hard to see, it did not contradict the trooper's testimony. As set forth above, after the *Turner* decision was released, another suppression hearing was held focusing specifically on the fog line issue.

{¶ 41} At the second suppression hearing, Trooper Day testified that the vehicle at issue traveled across the white fog line twice, the first time for a distance of about 50 to 75 feet, and the second time for a distance of about 50 feet. The trooper explained that the first time the vehicle crossed over the fog line, the right half of the tire was "over the line" and about a half a tire width was on the line. The trooper further testified that the second time the vehicle crossed the fog line there was "a half a tire width outside the right lane." After listening to additional testimony and reviewing the dashcam video for a second time, the trial court stated on the record as follows:

> I'm going to find that the evidence offered supports that this vehicle in question crossed on two occasions the right outside edge of that fog line by half a tire width, with half a tire width over that line, and half a tire width on or within that lane of travel.

8

> I'm going to find that that is a violation of the statute in question, and as such, the Trooper did have reasonable, articulable suspicion.
>
> I'm going to also find (inaudible) in particular as to the first of those lines - times that this vehicle is shown in that video, the video shows that car traveling for a considerable distance across that line. I'm going to find that that would also be an additional danger and would be unsafe conduct as discussed in that statute. The Trooper described it as 50 to 75 feet. I'm going to accept that, even though it appeared it was much longer distance from watching the video.
>
> Based on that, I am again going to deny the Defendant's Motions to Suppress in this matter.

{¶42} Thereafter, in its decision denying Allen's supplemental motion to suppress, the trial court noted that the trooper observed the vehicle travel across the white fog line two times and stated that the video "supports" and "bolsters" the trooper's testimony. The trial court specifically stated in its order that it found the trooper's testimony regarding the fog line to be credible and further stated that the video did not contradict the testimony. Thus, the trial court found that the initial stop was valid. After reviewing the video, we agree with the trial court's assessment. Although it was difficult for this Court to determine from the video the exact amount of tire width that crossed over the fog line, it was apparent that the vehicle had traveled across the line. Contrary to Allen's arguments, the video certainly does not directly contradict Trooper Day's testimony. Moreover, we cannot conclude that the trial court legally erred by applying the *Turner* holding to prohibit crossing over the fog line by half a tire width, as opposed to requiring that the entire tire cross over the line in order to find there was a violation of the statute at issue. To the contrary, we find the trial court reasonably applied the *Turner* holding to find that a violation of R.C. 4511.33(A)(l) occurred. Therefore, we cannot conclude, based upon the record before us, that the trial court's factual findings were against the manifest weight of the evidence in the record or that the trial court erred in denying Allen's motion to suppress.

{¶ 43} [ Omitted because related to issues not before this Court.]

{¶ 44} We can glean from the record that Allen's first motion to suppress appears to have primarily challenged the duration of the search, but not the initial stop or the K9 sniff of the vehicle. It was not until the *Turner* decision was released that another motion to

9

> suppress was filed, challenging primarily the initial stop. Although Allen's counsel attempted to raise some additional substantive issues regarding the stop, detention and search at that time, they were disallowed by the trial court. Instead, the second suppression hearing was limited to the issue of the alleged fog line violation and whether the statute was in fact violated or not in light of the *Turner* decision.
>
> {¶ 45} Thus, although we have reviewed the record to the extent possible, it does not appear that the arguments regarding the propriety of the K9 sniff were properly preserved for purposes of appeal. Moreover, "'[i]t is well settled that issues not raised in an original motion to suppress cannot be raised for the first time on appeal.' " *State v. Meadows*, 2022-Ohio-287, 184 N.E.3d 168, 121 (4th Dist.), quoting *State v. Jones*, 4th Dist. Highland No. 04CA9, 2005-Ohio-768, 2005 WL 433433, ¶ 18. See also *State v. Markins,* 4th Dist. Scioto No. I 0CA3387, 2013-Ohio-602, ¶ 25; *State v. Daboni*, 4th Dist. Meigs Nos., I 8CA3, 18CA4, 18CA5, 2018-Ohio-4155, ¶ 16. Accordingly, having found no merit to Allen's second assignment of error, it is overruled.

*State v. Allen, supra.*

To summarize, Petitioner argues the trial court did not follow *Turner* in deciding his second motion to suppress and the Fourth District violated his due process rights when it did not reverse the trial court's decision on the basis of *stare decisis*.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Cunningham v. Shoop,* 23 F.4th 636, 650 (6th Cir. 2022); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000); *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

If Allen's "due process requires *stare decisis*" claim was fairly presented to the Fourth District, this Court must decide whether the Fourth District decided that issue on the merits and whether its decision is contrary to or an objectively unreasonable application of United States Supreme Court precedent. On the other hand, if Allen did not fairly present the claim to the Fourth District, he is precluded by procedural default from presenting it here unless he can show excusing cause and prejudice.

Allen claims he did fairly present the claim to the Fourth District by "federalizing" it: "Appellate counsel did federalize this issue with references to *Kimble* and other cases declaring a due process right in adherence to precedent in the Ohio Supreme Court." (Memorandum, ECF No. 2, PageID 19). However, he gives no reference to any Supreme Court precedent except to *Kimble v. Marvel Entertainment, LLC,* 576 U.S. 446 (2015), which was not cited in his appellate brief (See Appellant's Brief, State Court Record, ECF No. 10, Ex. 19, Table of Authorities, PageID 170). Upon review of the entire Brief, the undersigned finds no reference to an argument that the trial court or the appellate court was bound as a matter of due process to apply *Turner* as Allen now argues it should have been applied. Because it was available to be presented to the Fourth District and was not, it is procedurally defaulted and cannot be heard here on the merits. *State v. Perry,* 10 Ohio St. 2d 175 (1967); Ohio's doctrine of *res judicata* in criminal cases, enunciated in *Perry,* is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Petitioner may be arguing in the alternative that the procedural default is excused by the

11

ineffective assistance of appellate counsel in failing to present that issue to the Fourth District. However, while ineffective assistance of appellate counsel can excuse a procedural default, the ineffective assistance of appellate counsel claim must first be presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000); *Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020); *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007). In Ohio law, the sole means for presenting such a claim is by application for reopening under Ohio R.App. P. 26(B). Allen has never filed such an application, much less prevailed on an ineffective assistance of appellate counsel claim.

Federal habeas courts are not permitted to hear procedurally defaulted claims. *Davila v. Davis*, 582 U.S. 521, 527 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 582 U.S. 521, 527(2017)). *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002).

**Merits**

Should the District Court reject the foregoing procedural default analysis, the Magistrate Judge offers the following analysis of the merits.

Petitioner asserts that the doctrine of *stare decisis* is a part of due process: "The United States Supreme Court has held that Due Process requires adherence to precedent" (Brief, ECF No. 2, PageID 18). In support, he cites *Kimble v. Marvel Entertainment, LLC,* 576 U.S. 446 (2015).

In *Kimble*, the Supreme Court declined to overrule one of its own precedents, *Brulotte v. Thys Co.,* 379 U.S. 29 (1964), which had held that a patentee could not continue to collect royalties

12

after the patent had expired. Allen quotes from Justice Kagan's majority opinion:

> Overruling precedent is never a small matter. Stare decisis-in English, the idea that today's Court should stand by yesterday's decisions-is "a foundation stone of the rule of law." *Michigan v. Bay Mills Indian Community,* 572 U.S. 782, 134 S.Ct.2024, 2036, 188 L.Ed.2d 1071 (2014). Application of that doctrine, although "not an inexorable command," is the "preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee,* 501 U.S. 808, 827-828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). It also reduces incentives for challenging settled precedents, saving parties and courts the expense of endless relitigation.

(Brief, ECF No. 2, PageID 18). Although the Court decided to adhere to its own precedent as a matter of policy (sometimes referred to as horizontal *stare decisis*), there is no hint that it was required to do so as a matter of due process; *Kimble* does not support the proposition for which Petitioner cites it.

Petitioner also cites *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989)(Brief, ECF No. 2, PageID 19). In *Patterson* the Supreme Court declined, on the basis of *stare decisis*, to overrule its decision in *Runyon v. McCrary*, 427 U.S. 160 (1976), interpreting 42 U.S.C. § 1981. In his majority opinion Justice Kennedy offered the following encomium to *stare decisis:*

> The Court has said often and with great emphasis that "the doctrine of *stare decisis* is of fundamental importance to the rule of law." *Welch v. Texas Dept. of Highways and Public Transportation,* 483 U.S. 468, 494, 107 S.Ct. 2941, 2957, 97 L.Ed.2d 389 (1987). Although we have cautioned that "*stare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision," *Boys Markets, Inc. v. Retail Clerks,* 398 U.S. 235, 241, 90 S.Ct. 1583, 1587, 26 L.Ed.2d 199 (1970), it is indisputable that *stare decisis* is a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon "an arbitrary discretion." The Federalist, No. 78, p. 490 (H. Lodge ed. 1888) (A. Hamilton). See also *Vasquez v. Hillery,* 474 U.S. 254, 265, 106 S.Ct. 617, 624, 88 L.Ed.2d 598 (1986) (*stare*

> *decisis* ensures that "the law will not merely change erratically" and "permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals").

491 U.S. at 172. While this is a strong statement of policy (again of horizontal *stare decisis*), it nowhere suggests *stare decisis* is required by the Due Process Clause. To prevail in habeas corpus on a constitutional claim decided by a state court on the merits, a petitioner must show that the state court decision is contrary to or an objectively unreasonable application of United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Petitioner's argument fails at the first stage of such a demonstration: he has not shown there is any Supreme Court precedent for his basic proposition that failure to follow precedent is a violation of the Due Process Clause.

Petitioner has not shown that either the trial court or the Fourth District failed to correctly interpret and apply *Turner*. After all, the Ohio Supreme Court, if it believed the Fourth District had misread *Turner*, had an opportunity to correct any misreading and declined to exercise it. If, as Allen argues, the Ohio Supreme Court took the *Turner* case to clear up confusion about the fog line rule, it surely would have been motivated to accept jurisdiction in this case if the Fourth District's decision was so patently a misinterpretation of Turner.

**Grounds Two and Three: Ineffective Assistance of Appellate Counsel**

In his Second and Third Grounds for Relief, Allen asserts he received ineffective assistance of appellate counsel when his appellate attorney failed to raise several issues on direct appeal. As noted above under Ground One, these claims are procedurally defaulted because Allen never filed an application to reopen his appeal under Ohio R. App. P. 26(B) which is the sole method of raising such claims in Ohio and his time to do so has long since expired.

Allen asserts his procedural default is excused by his actual innocence[4]. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013). Allen has submitted no new evidence to this Court of his actual innocence, much less evidence of the quality required by *Schlup*. The fact that he has claimed to be innocent from the outset of the case in itself proves nothing and is less than credible given the recorded conversation between him and the co-defendant during the search.

**Ground Four: Denial of Trial by Jury**

In his Fourth Ground for Relief, Petitioner asserts he was denied his right to a jury trial by the trial court's refusal to allow him to withdraw his no contest plea. He raised this claim as his

---

[4] Allen writes: "Petitioner also asserts his innocence as a claim in this Petition." However, the claim of actual innocence as a stand alone claim is nowhere pleaded as a ground for relief in the Petition and the Supreme Court of the United States has not recognized actual innocence as a stand-alone claim under the Constitution. *Herrera v. Collins*, 506 U.S. 390, 408-11 (1993).

15

First Assignment of Error on direct appeal and the Fourth District decided the trial court had not abused its discretion in denying the motion to withdraw, applying a nine-factor abuse of discretion test based on Ohio law. *State v. Allen, supra,* §§ 13-30.

Although the Petition phrases this Ground for Relief in terms of denial of a right to jury trial and ineffective assistance of trial counsel, his Brief argues "the denial of the motion to withdraw plea before sentencing resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law regarding due process clause and ineffective counsel." (ECF No. 2, PageID 27).

Petitioner cites no Supreme Court authority against which the Fourth District's decision can be evaluated. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). We cannot review the Fourth District's abuse of discretion ruling because abuse of discretion is not a denial of due process. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). There is no due process right to withdraw a no contest plea which has been entered knowingly and voluntarily. In sum, Petitioner's Ground Four is without merit.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

16

be permitted to proceed *in forma pauperis*.

June 2, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #